## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                                        SUPERIOR COURT
                                                   NO. 10-01986


### EDWARD MACPHERSON

v.

### PETER T. MARANO


## FINDINGS AND RULINGS ON CHAPTER 93A, SECTION 9 CLAIM (COUNT TWO) AND ORDER FOR JUDGMENT

Following trial before me and a jury from September 30, 2014 to October 3, 2014, I now

find and rule as follows on the plaintiffs chapter 93A, §9 claim.


## CONFRONTATION BETWEEN OFFICER MACPHERSON AND TROOPER GROVER

On June 26, 2006 the plaintiff, a Boston police officer, was working a paid detail

directing traffic for a building owner on Beverly street in Boston in close proximity to the TD

North Garden during a Tim McGraw-Faith Hill concert. The plaintiff arrived at about 10:15 PM

for his 11 PM detail. Shortly after the plaintiff arrived, he was confronted by a state trooper in a

marked cruiser who insisted that he move certain limousines which were double parked near

Beverly street. The trooper, Robert Grover, was evidently concerned that the limousines were or

might block state police vehicles from getting to and from the state police marine barracks which

were located off Beverly street down near the water. The Boston police ordinarily allow

limousines to remain double parked in that location during garden events. The trooper lacked

diplomacy; the conversation became heated and profane. Trooper Grover exited his vehicle and


RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY

1

threatened to arrest officer Macpherson. He closed on Macpherson and slapped his hand. He then

left the scene informing officer Macpherson that he would be back. Officer Macpherson

informed his supervisors what happened.

Officer MacPherson then started his detail directing traffic for the private building owner

near Causeway Street. Shortly thereafter trooper Grover reappeared in his cruiser, pulled into the

parking lot which was the focus of officer MacPherson's detail, and appeared to take note of

MacPherson's license plate. Trooper Grover then drove his state police vehicle directly at officer

MacPherson, who had to jump out of the way to avoid being hit. Officer MacPherson then went

to the driver's window of the trooper's vehicle and exchanged more heated words with trooper

Grover. Grover was dressed in a white shirt with the state police marine badge, blue shorts, , and

was equipped with a radio. Trooper Grover then reached outside his driver's-side window and

slapped MacPherson. In reaction, MacPherson reached inside the cruiser and grabbed trooper

Grover's shirt. Grover then gunned his vehicle and drove off down Causeway Street with

MacPherson hanging on to him. He stopped about 200 feet away. The two law enforcement

officers then fought until other state troopers and Boston police officers broke up the fight.

Officer MacPherson was taken to the hospital by ambulance. He sustained injuries to his

shoulder, back, elbow and forearm. He was out of work for approximately 3 months. Thereafter

he continued to have pain in the areas in which he was injured. A regime of physical therapy

restored some use of these body parts, but his elbow and neck remain stiff and he still has limited

range of motion.

During the time officer McPherson was out of work, approximately 3 months, there was substantial work being done on the so-called Big Dig which presented opportunities for extra details and overtime for police officers. Due to his injuries and his inability to work extra details and overtime, officer MacPherson lost approximately $15,000.

As indicated, certain disabilities continue to the present, mainly stiffness and limited range of motion in his neck, shoulder and elbow. Officer MacPherson is unable to participate in sports as he frequently did before including hockey, softball and bike riding. He is 56 years old.

Officer MacPherson also sustained significant emotional injuries as a result of the June 26, 2006 confrontation with trooper Grover. He feared for loss of his job. Shortly following the event, there was substantial publicity about it, and the officers involved were subject to public ridicule.

Officer McPherson was not disciplined by the Boston Police Department for his involvement. Trooper Grover was, however, suspended by the state police.

### THE FEDERAL COURT CASE

At the time of the MacPherson-Grover confrontation, the defendant Peter T. Marano had recently graduated from law school and was practicing at 100 State Street in Boston. MacPherson's partner, officer James Bates, knew attorney Marano and recommended that MacPherson contact him about a possible lawsuit. Officer MacPherson did that in the spring of 2007. During their first meeting, Attorney Marano said that he was willing and able to handle the case, that he was confident in his ability to handle it, that it was a very good case, and he expected to recover a substantial sum for officer MacPherson. MacPherson and Marano entered

3

into a fee agreement (exhibit 16). In paragraph 1 of the fee agreement, it is recited that the

attorney is on a "contingency" fee for this case; however, the agreement does not specify a

percentage of any recovery which might go to the attorney. Paragraph 9 of the agreement

provides that in the event of either completion of the matter or the termination of the attorney's

representation of the client, then the "total cost of the legal services performed by the Attorney is

$1600."

Mr. Marano filed the contemplated lawsuit on behalf of officer MacPherson in the United

States District Court in Boston on February 19, 2008. (Exhibit 14, federal court docket). The

case was originally assigned to judge Lindsay who thereafter passed away; the case was then

assigned to Judge William Young.

The defendants in the lawsuit were as follows: state police officers Walsh, Delaney and

McGovern, each of whom was in the chain of command above trooper Grover, represented by

Assistant Attorney General Lisa Fauth; Sgt. Vitiello, who participated in the scuffle following

trooper Grover's drive-away with officer MacPherson clinging to the car, represented by

attorney Joseph Kittredge; and trooper Grover represented by several lawyers from the law firm

of Brody, Hardoon, Perkins & Kesten. The theories of liability asserted were violation of federal

civil rights (42 U. S. C §1983), violation of the Massachusetts Civil Rights Act (G.L.c. 12,

§§11H and 11I), and common-law assault and battery. Early on, some of the claims of

supervisory liability were dismissed on a motion to dismiss by attorney Fauth without

opposition from attorney Marano.

4

Under the rules which govern litigation in the United States District Court for the district

of Massachusetts, the parties are required to provide automatic discovery at the beginning of the

case, and to certify that they have done so. If they don't, they may not engage in discovery of

their own. Attorney Marano did not certify that he provided automatic discovery.

Attorney Fauth on behalf of the supervisors served attorney Marano with interrogatories

and a request for production of documents under rule 34, Federal Rules of Civil Procedure, in

January 2009. Responses were due on February 18, 2009. Although Mr. Marano eventually

provided answers to interrogatories (although not in the form required by the rules with question

followed by answer), he never served attorney Fauth with a formal response to her 25 paragraph

document request under rule 34. Claiming that she did not receive a response or the documents,

she filed a motion to compel on May 22, 2009 (Exhibit 14, docket entry 35). Attorney Marano

did not oppose the motion to compel. Judge Young, not surprisingly, allowed the motion and

eventually ordered discovery to be produced by July 1, 2009. Mr. Marano did not comply with

Judge Young's order. Thereafter, on July 22, 2009, attorney Fauth filed a motion for sanctions

under rule 37, Federal Rules of Civil Procedure, asking for dismissal. Again, Mr. Marano never

filed an opposition. Judge Young allowed the unopposed motion and dismissed the entire case on

August 25, 2009. (Exhibit 14, docket entry 41).

In early September 2009, attorney Marano called and gave the disappointing news to

officer MacPherson that his case had been dismissed. Needless to say, officer MacPherson asked

for an explanation but attorney Marano did not provide any, beyond the vague "it sometimes

happens in the federal court". Officer McPherson asked what could be done. Attorney Marano

said that he would file a motion asking Judge Young to reconsider his decision.

5

Apparently unmoved by the urgency of the situation, attorney Marano got around to

filing his motion for reconsideration on October 16, 2009 (Exhibit 14, docket entry 42). He

blamed the lack of production on "confusion on the part of the defense counsel with

communication" (Exhibit 10, page 4). All defendants opposed, making several points: 1) the

discovery was first served on January 13, 2009, with responses due on February 18, 2009; 2)

despite numerous calls to plaintiff's counsel regarding the outstanding discovery, no responses

were given; 3) when plaintiff's assistant counsel requested additional time to April 9, 2009, the

defendants agreed, yet nothing was produced at that time; 4) defense counsel attempted to reach

plaintiff's counsel by telephone several times but there was no response to the phone calls ever

made; 5) plaintiff's counsel filed no opposition to defendant's motion to compel or motion for

sanctions; 6) plaintiff's counsel even now offers no legitimate excuse for his lack of compliance

and tries to shift the blame onto defense counsel for the "difficulty coordinating with numerous

attorneys in this case"; and 7) plaintiff's claim to be "unaware of the issues pertaining to

outstanding discovery is ludicrous." Judge Young denied the motion to reconsider on October

28, 2009. No appeal was taken.


## THE NORFOLK MALPRACTICE CASE

On February 1, 2001, the plaintiff filed the present action for attorney malpractice. He is

represented by attorney Michael J. Heinemann. The complaint asserts two causes of action:

attorney malpractice (count one) and violation of G.L.c. 93A, §9 (count two). Following a four

day jury trial before me, the jury returned a verdict of $750,000 on count one. I reserved count

two for court determination.

The malpractice was blatant. Attorney Marano ignored his automatic discovery

obligations, therefore preventing him from taking any depositions or engaging in any discovery

of his own. He did not seem aware of his obligation to respond to interrogatories and request for

production of documents in a particular format and within a particular time. In particular with

respect to a rule 34 document request, responding counsel is required to serve a written response,

addressing the request to produce paragraph by paragraph, either stating "that inspection and

related activities will be permitted as requested or state an objection to the request, including the

reasons." F.R.Civ.P.34(b)(2)(B). Attorney Fauth's request for production was in 25 separate

paragraphs. Marano never filed a paragraph by paragraph response, indicating either that he

would produce the documents requested, that he did not have them, or that he objected to the

request. In the absence of a formal response, it is futile to argue, as Marano eventually did in his

motion for reconsideration, that he produced "everything that he had". Likewise, he repeatedly

testified in the trial before me that "he produced everything that he had in his file"; but what that

means is anybody's guess. For instance, request 25 requests the "plaintiff's internal Boston

Police Department personnel file, including any and all disciplinary and conduct reports." I still

do not know if attorney Marano ever produced that file. Moreover, there was no evidence that

attorney Marano ever requested his client to obtain that file, got it himself, objected to the

request, or produced it to the defense. Attorney Marano testified that he was under the

impression that the defendants were only concerned with the production of the state police

report, which he did not have and which they of course would have had access to. I do not

believe that that was the primary issue; at least it is never mentioned in any of the papers filed in

the federal court by defense attorneys.

By attorney Marano's failure to file an opposition to attorney Fauth's motion to compel

and to her motion for sanctions, Judge Young was left in the dark about whether or not anything,

including the personnel file, was ever produced or whether there was a problem in producing it.

One must ask what attorney Marano possibly could have expected judge Young to do with the

unopposed motions other than to allow them.

Attorney Marano offered very little at trial in mitigation. He claimed no excusable

neglect or personal hardship. He never explained what he felt defense counsel's confusion was,

other than the alleged missing state police report. Nor is there any evidence that attorney Marano

even attempted to obtain all of the documents requested late, produce them, try to demonstrate to

Judge Young that all documents which were requested had been produced or could not be

produced, point out the lack of prejudice to the defendants and argue that a lesser sanction was

more appropriate.[1]

At the jury trial before me, attorney Marano claimed that an attorney with whom he

shared office space, Mark Evlogiatis, agreed to take over the discovery and it was Evelogiatis

who dropped the ball. I do not believe that. Mr. Evlogiatis did not file an appearance in the

federal district court action. If he was in fact responsible to handle all of the discovery as Mr.

Marano asserts, Mr. Marano certainly would have been on notice that he, Evelogiatis, was not to

be relied upon when he did not file an opposition to the motion to compel, thus leaving the client

---

[1] It should be noted that the dismissal included trooper Grover, who filed no discovery at all.

8

open to a later motion for sanctions. Further, Mr. Marano was well aware that attorney Fauth was

complaining that Mr. MacPherson had not complied with Judge Young's order to produce

documents by July 1. Even if one could lay the blame on attorney Evlogiatis's negligence for

causing the discovery order to enter, that could not have continued as an excuse for doing

nothing at all when the motion for sanctions was later served. Finally, the "Evlogiatis did it"

excuse is inconsistent with the position that Mr. Marano took in his motion for reconsideration

before judge Young: "Further, plaintiff's assistant counsel contacted defense counsels on June 2,

2009 to inform them that attorney Marano was handling discovery." (Exhibit `10. P.3)

On September 21, 2010 attorney Heinemann, present counsel for officer McPherson,

mailed to attorney Marano by certified mail, return receipt requested, a formal demand for

settlement under G.L.c 93A, §9. He sent the demand to the address that attorney Marano was

using at the time of the federal court case, 100 State Street, and to 77 North Washington St.,

Boston, an address for attorney Marano listed with the Board of Bar Overseers. The green card

was not returned from 100 State Street; but a green card was return for 77 North Washington St.,

signed by someone named "R. Kappana" (exhibit C, C1 and C2). Mr. Marano testified that he

did not recall receiving the letter, but again I do not credit this testimony. Most of Marano's

testimony was not credible. I find that he did receive it.

Attorney Marano's conduct in undertaking and handling officer MacPherson's case

against trooper Grover and the other state police officers was a violation of G.L.c. 93A. Lawyers

are subject to chapter 93A claims. Frullo v. Landenberger, 61 Mass.App.Ct. 814, 822 (2004).

When MacPherson met Marano for the first time in his office, attorney Marano said or implied

that he had a great case, that he (Marano) knew what he was doing and that he was going to get a

9

big verdict. In fact, Marano was blowing smoke. He did not know what he was doing. He had

been practicing law for about 15 months. He did not know the rudiments of the Federal Rules of

Civil Procedure and the local rules of the United States District Court.

Attorney Marano's conduct violated the Massachusetts rules of professional conduct.

Rule 1.1 requires a lawyer "to provide competent representation to a client. Competent

representation requires the legal knowledge, skill, thoroughness, and preparation reasonably

necessary for the representation." Not knowing the basic rules, Marano was hopelessly

incompetent. He did not act with reasonable diligence (rule 1.3). He did not keep his client,

officer MacPherson, reasonably informed about the status of the matter (rule 1.4). The confusing

fee agreement, although not causing any particular harm, is noncompliant with rule 1.5.

As result of attorney Marano's misconduct, officer MacPherson lost a valuable

opportunity to either settle his case, or take it to trial and obtain a jury verdict. The attorney for

trooper Grover, Leonard Kesten, testified that in his opinion the case against Grover was strong.

In particular Kesten testified that he did not believe that he could have persuaded a jury that

Grover's driving his cruiser 200 feet down the road with McPherson hanging on for dear life was

reasonable and not excessive. MacPherson's expert witness on malpractice, attorney Heinlein,

opined that the fair settlement value the case was $100,000. That was the amount demanded in

settlement by attorney Heinemann's chapter 93A letter (exhibit C). I agree that $100,000 is a

reasonable amount for settlement purposes and so find.

The alternate measure of recovery is what the jury would have awarded against trooper

Grover had the case gone to trial. The jury in the malpractice case before me likely set that

amount at $750,000. I agree with the jury that had the case gone to trial in the federal court, the

Case 16-01145   Doc 1-1   Filed 08/17/16   Entered 08/17/16 08:26:40   Desc Exhibit A
Page 11 of 13


jury probably would have found in officer MacPherson's favor against trooper Grover. Although

I cannot say that that amount awarded in the malpractice case is excessive, I am the factfinder for

chapter 93A purposes and I conclude, based on officer MacPherson's testimony about his

injuries (including his emotional injuries) and review of the medical records, that the jury award

probably would have been $150,000 for compensatory damages. Punitive damages are also

available in a §1983 claim. I find that the federal district court jury was also likely to award

punitive damages because trooper Grover's conduct was a malicious, wanton, abuse of power. I

find that the likely amount of punitive damages was also $150,000. However, in the absence of

any evidence of trooper Grover's ability to pay punitive damages, which, unlike compensatory

damages, would not have been indemnified by the Commonwealth, I must conclude that punitive

damages would have been uncollectible. Finally, because attorney Marano never responded to

the chapter 93A, §9 demand, I find that his refusal to grant relief was made in bad faith with

reason to know that his misconduct violated G.L.c. 93A, §2 (declaring unlawful unfair or

deceptive acts or practices in the conduct of any trade or commerce). He did not respond to the

chapter 93A letter because he had nothing to say; his malpractice was indefensible. He was

obliged to make a reasonable settlement offer. His failure to do so warrants treble damages.


## SUMMARY

I find that attorney Marano committed legal malpractice (was negligent) in his handling

of the federal court case for the plaintiff. I find that his malpractice was willful and knowing in

that he knew that his legal knowledge about the rules governing civil litigation was woefully

inadequate to handle plaintiff's case. I award treble damages. I find, furthermore, that following

demand by plaintiff's counsel for relief under G.L.c. 93A, §9 he failed to make a reasonable

settlement offer, and that he knew that his malpractice was a violation of chapter 93A, §2. The

failure to respond also warrants treble damages.

I find that the underlying compensatory damages which the federal District Court jury

likely would have awarded would have been $150,000. Those damages would have been

indemnified by the Commonwealth and thus collectible. The jury would also have likely

awarded punitive damages in the amount of $150,000, but they would not have been indemnified

and would not have been collectible.

### ORDER

Judgment shall enter as follows: on count one, judgment for the plaintiff on the jury

verdict in the amount of $750,000, plus interest from the date of filing, plus costs as allowed by

law. On count two: judgment for the plaintiff for underlying damages in the amount of $150,000,

together with interest computed from the date of filing. In addition, punitive damages in the

amount of $300,000 are awarded, without interest.

The plaintiff may have until October 22, 2014 to file and serve an application for

attorney's fees and costs under G.L.c. 93A. The defendant may have until October 29, 2014 to

file and serve a response.

Patrick F. Brady
Justice, Superior Court

14 Oct 14

I ATTEST THAT THIS DOCUMENT
IS A CERTIFIED PHOTOCOPY OF
AN ORIGINAL ON FILE.

Assistant Clerk  10/18/14

13