# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

IN RE:                          )          Case No.: 16-12011
                                )          Chapter 7
PETER T. MARANO                 )

_____

EDWARD MACPHERSON               )          Adversary Proceeding 16-01145
Plaintiff                       )
                                )
v.                              )
                                )
PETER T. MARANO                 )
Defendant                       )

## CREDITOR/PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Creditor/Plaintiff, Edward Macpherson, ["Officer Macpherson"] hired Debtor/Defendant,

Peter T. Marano, ["Marano"] in connection with an action against a Massachusetts State Trooper

for injuries sustained by Officer Macpherson stemming from an altercation occurring on June 26,

2006.  In the suit, Marano failed to adequately represent Officer Macpherson in a competent

manner by failing to comply with discovery rules; failing to oppose motions to compel

discovery; and failing to comply with a Federal Court Order regarding the production of the

requested discovery.  The case was dismissed on August 25, 2009.

On November 3, 2010, Officer Macpherson brought an action against Marano for

attorney malpractice and violation of M.G.L. c. 93A, §9.  The malpractice case was tried to a

jury and the 93A claim was tried by Judge Patrick Brady of the Norfolk Superior Court.  The

jury found that Marano's conduct constituted malpractice and awarded Officer Macpherson

$750,000 in damages.  Judge Brady held that Marano's conduct violated M.G.L. c. 93A and

the Massachusetts Rules of Professional Conduct.  Judge Brady awarded treble damages

both (1) because Marano's violations of M.G.L. c. 93A were willful and knowing; and (2)

because Marano failed to respond or make a reasonable settlement offer in response to

Plaintiff's M.G.L. c. 93A, §9 demand.

Marano filed the instant Chapter 7 petition on May 26, 2016.  On August 17, 2016,

Officer Macpherson timely filed an adversary complaint against Marano seeking a declaration

that the judgment entered by the Norfolk Superior Court was non-dischargeable pursuant to 11

U.S.C. §523(a)(2)(A) and §523(a)(4).  By this Motion, Officer Macpherson seeks summary

judgment based on collateral estoppel.

## FACTUAL BACKGROUND

All of the facts set forth herein come directly from the findings of Judge Brady in the

M.G.L. c. 93A case against the debtor.  A copy of Judge Brady's "Findings and Rulings on

Chapter 93A, Section 9 Claim (Count Two) and Order for Judgment" is attached hereto as

Exhibit "A".  Hereafter the findings shall be referred to as "*Brady Findings*, page __".

### Federal District Court Case

Marano represented Officer Macpherson, a Boston Police Officer, in a civil lawsuit

stemming from an altercation occurring on June 26, 2006 between Officer Macpherson and a

Massachusetts State Trooper.  Marano filed the lawsuit on behalf of Officer Macpherson in

the United States District Court in Boston on February 19, 2008.  The theories of liability

asserted were violations of federal civil rights (42 U. S. C §1983), violations of the

Massachusetts Civil Rights Act (M.G.L. c. 12, §§11H and 11I), and common-law assault

and battery.  *Brady Findings*, page 4.  Marano failed to provide his automatic discovery

(initial disclosures) under Fed. R. Civ. P. 26 and to certify his responses as required by the

Rules governing the United States District Court for the District of Massachusetts at the beginning of the case.  As a result of Marano's inaction, the Plaintiff was precluded from engaging in discovery of his own.  *Brady Findings*, page 5.

One Defendant served Marano with interrogatories and a request for production of documents in January 2009 with responses due on February 18, 2009.  While Marano eventually provided answers to interrogatories, the document responses were not provided in the correct form as required by the Federal Rules of Civil Procedure. *Brady Findings*, page 5.

As a result, counsel filed a motion to compel.  Marano did not oppose this motion and it was subsequently allowed by Judge Young.  Discovery was ordered to be produced by July 1, 2009.  Marano failed to comply with the Court Order and failed to provide the requested discovery.  The Defendant then filed a motion for sanctions under Fed. R. Civ. P. 37, seeking dismissal of the case.  Marano again failed to oppose or otherwise respond to the Motion.  Judge Young allowed the unopposed motion and dismissed the entire case on August 25, 2009. *Brady Findings*, page 5.

Nearly two months after the action was dismissed, Marano filed a motion for reconsideration blaming the lack of production on "confusion on the part of the defense counsel with communication."  The Defendant opposed the motion.  Judge Young denied the motion to reconsider.  No appeal was taken.  *Brady Findings*, page 6.

**<u>Norfolk Superior Court Malpractice Case</u>:**

On November 3, 2010, Officer Macpherson brought an action against Marano for attorney malpractice and a violation of M.G.L. c. 93A, §9.  Following a four-day jury trial, the jury returned a verdict of $750,000 on count one (malpractice). Count two (M.G.L. c.

93A) was reserved by Judge Brady.

On October 14, 2014, Judge Brady issued his findings.  Judge Brady held that Marano's malpractice was "blatant" by ignoring his automatic discovery obligations, thereby preventing him from taking any depositions or engaging in any discovery of his own on behalf of Officer Macpherson.  Judge Brady found that Marano "did not seem aware of his obligation to respond to interrogatories and request for production of documents in a particular format and within a particular time" *Brady Findings* Page 7.

Marano failed to oppose motions to compel discovery; failed to comply with a Federal Court Order regarding the production of the requested discovery; failed to oppose motions to dismiss and motions to compel discovery; and failed to oppose a motion for sanctions under Fed. R. Civ. P. 37 seeking dismissal which was allowed by Judge Young. *Brady Findings*, pages 6-9.

On September 21, 2010, counsel for Officer McPherson mailed to Marano by certified mail, return receipt requested, a formal demand for settlement under M.G.L. c 93A, §9.  Judge Brady, who found that "most of Marano's testimony was not credible", held that Marano received the demand letter.  *Brady Findings*, Page 9.

Judge Brady found that Marano's conduct in undertaking and handling Officer Macpherson's case in Federal Court was a violation of M.G.L. c. 93A.  Judge Brady found that Marano "did not know what he was doing" and had only been practicing law for 15 months and did not know the rudiments of the Federal Rules of Civil Procedure and the local rules of the United States District Court thereby violating the Massachusetts Rules of Professional Conduct Rule 1.1 requiring a lawyer "to provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and

preparation reasonably necessary for the representation."  Judge Brady found that because

Marano did not know the basic rules, "Marano was hopelessly incompetent" and "did not

act with reasonable diligence (Rule 1.3). He did not keep his client, Officer Macpherson,

reasonably informed about the status of the matter (Rule 1.4). *Brady Findings*, pages 9-10.

Judge Brady found that Officer Macpherson lost a valuable opportunity to either settle his

case, or take it to trial and obtain a jury verdict as a result of Marano's misconduct.  *Brady*

*Findings*, page 10.

     Judge Brady found that the $100,000 settlement demanded in Officer Macpherson's

Chapter 93A settlement letter was a reasonable amount for settlement purposes.

Alternatively, Judge Brady found that had the case gone to trial, the jury probably would

have found in Officer Macpherson's favor against the State Trooper.  Judge Brady

concluded, based on Officer Macpherson's testimony about his injuries (including his

emotional injuries) and review of the medical records, that the jury award probably would

have been $150,000 for compensatory damages. *Brady Findings*, pages 10-11.

     Judge Brady found that because Marano never responded to the chapter 93A, §9

demand, his refusal to grant relief was made in bad faith with reason to know that his

misconduct violated M.G.L. c. 93A, §2.   Judge Brady found that Marano did not respond

to the chapter 93A letter because he had nothing to say and that his malpractice was

indefensible.  *Brady Findings*, page 11.

## **ISSUE PRESENTED**

     The issue presented is whether Officer Macpherson is entitled to summary

judgment because the debtor is collaterally estopped from contesting his liability under

§523(a)(2)(A) and/or §523(a)(4) based upon the findings of fact and rulings of law set forth in

the Norfolk Superior Court's Findings and Rulings on Chapter 93A, Section 9 Claim (Count

Two) and Order For Judgment.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary

proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary

judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and

any affidavits show that there is no genuine issue as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

An issue is "genuine" for purposes of Rule 56 "if the evidence of record permits a rational

fact finder to resolve it in favor of either party." Borges v. Serrano-Isern, 605 F.3d, 4-5 (1st Cir.

2010).  "A fact is 'material' if its existence or nonexistence has the potential to change the

outcome of the suit." Id. at 5 (citing Martinez v. Colon, 54 F.3d 980, 984 (1st Cir. 1995)).  The

party requesting summary judgment "bears the initial burden of informing the trial

court of the basis for his motion and identifying the portions of the pleadings, depositions,

answers to interrogatories, admissions, and affidavits, if any, that demonstrate the absence of any

genuine issue of material fact." Id. (citing Celotex Com. v. Catrett, 477 U.S. 317, 323 (1986)).

"Once the moving party has accomplished this feat, the burden shifts to the nonmoving

party who must, with respect to each issue on which he or she would bear the burden of proof at

trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Id.  (citing

*Celotex*, 477 U.S. at 324).  The nonmoving party must show that there is sufficient evidence such

that "a reasonable jury could, on the basis of the proffered proof, return a verdict" in its favor.

Brennan v. Hendrigan, 888 F.2d 189, 191 (1st Cir. 1989).  A party disputing a material fact must

do so by "citing to particular parts of materials in the record .... " Fed. R. Civ. P. 56(c)(1)(A).

Denials, without more, are insufficient to create a factual dispute. <u>Tomsic v. Sales Consultants of Boston, Inc</u>. (<u>In re Salience Assocs</u>.), 371 B.R. 578, 585 (Bankr. D. Mass. 2007).

<u>**ARGUMENT**</u>

1.   **The Findings of the Norfolk Superior Court are Binding in this Proceeding Under the Doctrine of Collateral Estoppel**

In determining whether a party should be estopped from re-litigating an issue decided in a prior state court action, the Bankruptcy Court must look to that state's law of collateral estoppel. <u>McCrory v. Spigel (In re Spigel)</u>, 260 F.3d 33 (1st Cir. 2001).

Under Massachusetts law, collateral estoppel precludes re-litigation of issues in prior actions between the parties provided the issues were actually litigated in the first action and determined by a 'final judgment on the merits.'   <u>Smith Barney, Inc. v. Strangie (In re Strangie)</u>, 192 F.3d 192, 194 (1st Cir. 1999).  The doctrine of collateral estoppel bars the debtor from re-litigating in this adversary proceeding the issue of whether his conduct, as found by the Norfolk Superior Court, constituted false pretense, false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition under 11 U.S.C. §523(a)(2)(A); and/or fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. §523(a)(4).  If collateral estoppel applies in this matter, the creditor would be entitled to summary judgment as there will be no material facts in dispute.  Fed. R. Civ. P. 56(a).

To apply the doctrine, this Court must determine whether: 1) there was a valid and final judgment on the merits in the prior adjudication; 2) the party against whom estoppel is asserted was a party to the prior litigation; 3) the issue in the prior adjudication is identical to the issue in the current litigation; and, 4) the issue in the prior litigation was essential to the earlier judgment. <u>Alba v. Raytheon Co</u>., 441 Mass. 836 (2004).

The Massachusetts Supreme Judicial Court has noted that the guiding principle in determining whether to allow a party to use collateral estoppel is whether the party against whom it is asserted had a 'full and fair opportunity to litigate the issue in the first action. Treglia v. MacDonald, 430 Mass. 237 (1999).

With respect to this matter, there can be no dispute that: (1) there was a valid and final judgment on the merits in the Norfolk Superior Court; and (2) that the party against whom estoppel is asserted (the debtor) was a party to that prior litigation. The debtor's conduct was an essential element in the Norfolk Superior Court action which led Judge Brady to award treble damages, punitive damages, plus interest and costs as allowed by law to the creditor.

Moreover, there is no question the debtor had a full and fair opportunity to litigate the issue of whether he, through his own conduct, acted under false pretenses, false representation, or actual fraud; and was the holder of debt resulting from fraud or defalcation while acting in a fiduciary capacity, thereby causing injury to the creditor. Those issues were litigated before a superior court judge during the four-day trial.

2. **The Norfolk Superior Court Award Should Be Excepted From Bankruptcy Discharge Under Section 523(a)(2)(A) and/or Section 523(a)(4).**

Section 523(a)(2)(A) excepts from discharge "money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 USC §523(a)(2)(A). Section 523(a)(4) excepts from discharge debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 USC §523(a)(4). The Creditor/Plaintiff bears the burden of proving his claim under § 523(a)(2)(A) and §523(a)(4) by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287 (1991). Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's 'fresh start' policy,

and, for that reason, the claimant must show that his claim comes squarely within an exception enumerated in Bankruptcy Code §523(a).  Birch Hollow, LLC v. Tardugno, 510 B.R. 12 (2014). The statutory requirements for a discharge are construed liberally in favor of the debtor and [t]he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." Id.

### A.  Section 523(a)(2)(A)

The Court held in Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010) that while the "fraud exception to discharge should be strictly construed against creditors and in favor of debtors… dishonest debtors are not favored."  The United States Supreme Court in Cohen v. De La Cruz, 523 U.S. 213, 223 (1998) remarked that it is "unlikely that Congress ... would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud."  Here, Marano's debt to the Plaintiff should not be discharged because of his false representations made to the Plaintiff which were wholly dishonest.  Officer Macpherson relied on these deceitful representations to his detriment resulting in the complete dismissal of his Federal Court case.  Accordingly, with respect to fraudulent conduct, a creditor must prove actual fraud, rather than fraud implied in law.  Palmacci, 121 F.3d at 788.  Although fraud cannot be implied in law, it may be inferred from the totality of the circumstances.  Id. at 789.

In order to establish non-dischargeability under 523(a)(2)(A), the creditor must establish that the debtor acted with actual fraud, made a false representation or false pretenses.  Birch Hollow, 510 B.R. 12.  In McCrory v. Spigel (In re Spigel), 260 F.3d 27 (1st Cir. 2001), the United States Court of Appeals for the First Circuit offered a checklist for determining the applicability of this statute:

The statutory language [of § 523(a)(2)(A)] does not remotely suggest that nondischargeability attaches to a claim other than one which arises as a direct result of the debtor's misrepresentations or malice. Thus, in order to establish that a debt is nondischargeable because obtained by "false pretenses, a false representation, or actual fraud," we have held that a creditor must show that 1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied upon the misrepresentation, 5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage. *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir.1997). Though the first two elements of the *Palmacci* test describe the conduct and scienter required to show fraudulent conduct generally, the last four embody the requirement that the claim of the creditor arguing nondischargeability in an adversary proceeding must arise as a direct result of the debtor's fraud.

Id. at 32.

In Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur), 482 B.R. 15, 28

(Bankr. D. Mass. 2012) *aff'd*, CIV.A. 12-12414-DPW, 2013 U.S. Dist. LEXIS 77604, 2013 WL

2436688 (D. Mass. June 3, 2013) *aff'd*, 737 F.3d 814 (1st Cir. 2013), the Court held that

under §523(a)(2)(A), false pretenses, false representation or actual fraud establishes three

separate standards, any one of which may be grounds for a finding of non-dischargeability.  The

Court concluded that the "difference between a false representation and false pretenses is that the

latter involves 'an implied misrepresentation or a false impression created by conduct of the

debtor . . . [W]hen the circumstances imply a particular set of facts, and one party knows the

facts to be otherwise, that party may have a duty to correct what would otherwise be a false

impression. This is the basis of the 'false pretenses' provision of Section 23(a)(2)(A)." *Levasseur*,

482 B.R. at 28.

      i.      Marano Made Either A Knowingly False Representation
              Or One Made In Reckless Disregard of The Truth To
              Officer Macpherson With The Intention Of Deceiving Him

It was proven in the Norfolk Superior Court case that Marano intended to deceive Officer

Macpherson.  During their first meeting, Marano stated that he was "willing and able to

handle the case, that he was confident in his ability to handle it, that it was a very good case, and he expected to recover a substantial sum for Officer Macpherson." *Brady Findings*, page 3.  Marano's subsequent conduct shows his blatant disregard and complete ignorance to the judicial system and to his client.  Judge Brady specifically found that by saying or implying to the Plaintiff that he had a great case and that he (Marano) knew what he was doing and that he would get the Plaintiff a big verdict Marano was merely "blowing smoke." *Brady Findings*, pages 9-10.  Marano knew that his knowledge of the Federal Rules of Civil Procedure was inadequate to represent Officer Macpherson at the time these statements were made.  Judge Brady wrote "I find that [Marano's] malpractice was willful and knowing in that he knew that his legal knowledge about the rules governing civil litigation was woefully inadequate to handle plaintiff's case".  *Brady Findings*, page 11.

Moreover, it was proven that Marano knowingly and intentionally made false representations to Macpherson after dismissal of the case when Marano told Macpherson "it sometimes happens in the federal court," after Officer Macpherson inquired as to why his case was dismissed.  There is no further evidence needed to show that this statement was knowingly made with the intent to deceive.  Marano knew the reason Officer Macpherson's case was dismissed was because of his own conduct and not merely because "these things happen."  Judge Brady found that Marano was "hopelessly incompetent" in his representation of Officer Macpherson, that Marano committed malpractice and that such malpractice was "willful and knowing in that he knew that his legal knowledge about the rules governing civil litigation was woefully inadequate to handle plaintiff's case." *Brady Findings*, page 11.

This case is unlike Falcone v. Ragonese, 2013 Bankr. LEXIS 2734 where the defendant, a construction contractor, made certain promises to the plaintiffs as to when the project would be

completed (i.e. their house "framed and made weather tight by winter").  The defendant

demanded payment in advance in order to complete the project.  When the Defendant failed to

complete this work, this Court held that while the Defendant "fell short of achieving their goal,

the evidence at trial does not establish that he acted fraudulently or made false or reckless or

deceptively untruthful statements up to this time.  At best the evidence establishes that [the

Defendant] was involved in multiple construction or development projects during the relevant

time period and he failed to devote sufficient attention to [the plaintiff's] project."   In the present

case, it is not merely an issue of devotion of time to Officer Macpherson's case, but a lack of

satisfactory training, experience and knowledge in taking a case in which Marano was woefully

unprepared to accept.  Judge Brady specifically found such as set forth above.  Nor did Marano

present evidence to defend himself against his inability to respond to discovery requests or a

Federal Court Order; oppose motions to compel, a motion for sanctions or a motion to

dismiss.

  This case is more like the further promise that this Court found that the Defendant in

Falcone v. Ragonese, 2013 Bankr. LEXIS 2734, made to the Plaintiffs telling them that "all of

your monies are going into the project" and the assurance that "the house will not have any liens

on it" and that he promised to "be exclusively on this project" when in fact, these statements

were known to be untrue at the time the statements were made.  Similarly, Marano's statements

to Officer Macpherson during their first meeting are grounds to establish Marano made either a

knowingly false representation or one made in reckless disregard of the truth to Officer

Macpherson with the intention of deceiving him because Marano knew he was wholly

unqualified to take this case when the statements were made.  Marano's subsequent statements to

Officer Macpherson that dismissal "sometimes happens" in federal court was likewise fraudulent.

> ii.    Marano Intended To Deceive Officer Macpherson Through
> His Knowingly False Representations and Fraudulent Conduct

For a debt to be excepted from discharge under Section 523(a)(2)(A), the debtor must actually intend to defraud the creditor.  Intent to deceive is a question of fact which may be inferred from surrounding circumstances.  In re Tsurukawa, 258 BR 192 (9th Cir. BAP 2001); In re Kennedy, 108 F.3d 1015, 1018 (9th Cir. 1997).  Judge Brady found that Marano deceived Officer Macpherson in several ways: (1) Marano lied about his ability to handle the case; (2) Marano lied about his ability to get a big verdict; and (3) Marano lied about how the case was dismissed.  More specifically, Judge Brady specifically found "[w]hen Macpherson met Marano for the first time in his office, Marano said or implied that he had a great case that he (Marano) knew what he was doing and that he was going to get a big verdict.  In fact, Marano was blowing smoke.  He did not know what he was doing.  He had been practicing law for about 15 months.  He did not know the rudiments of the Federal Rules of Civil Procedure and the local rules of the United States District Court."  *Brady Findings*, pages 9-10.

Judge Brady also found that after dismissal of the case, Marano told Macpherson "it sometimes happens in the federal court" after Officer Macpherson inquired as to why his case was dismissed.  In truth, Officer Macpherson's case was dismissed for Marano's failure to comply with discovery rules; failing to oppose motions to compel discovery; and failing to comply with a Federal Court Order regarding the production of the requested discovery.  It can be inferred from these facts that Marano's intent in making this knowingly false statement was motivated by his intent to defraud Officer Macpherson.

     iii.     Marano Intended To Induce Officer Macpherson
                   <u>To Rely Upon His False Statements In Their Initial Meeting</u>

According to Judge Brady's Findings, "[w]hen Macpherson met Marano for the first time in his office, Marano said or implied that he had a great case that he (Marano) knew what he was doing and that he was going to get a big verdict."  Marano's statements during their first meeting were intended to induce Officer Macpherson into hiring him as his attorney for this complex case.  As a recent law school graduate and with only 15 months of experience, this case was above Marano's head, one which he most likely would never have been hired for if he had accurately represented his knowledge, training and experience to Officer Macpherson at the first meeting.

Further, Marano's statement to Officer Macpherson that "it sometimes happens" regarding the reasoning behind the dismissal of his Federal Court case was intended to induce Officer Macpherson to accept the outcome resulting in the case's dismissal.  There is no other comprehensible interpretation of either of Marano's statements to Officer Macpherson other than his intention to induce Officer Marano to rely upon them.

     iv.     Officer Macpherson Actually Relied Upon
                   <u>The Misrepresentation Made By Marano</u>

Officer Macpherson's reliance on Marano's statements made during their first meeting is undisputed.  Marano's false statements of assured success in the Federal Court case and to his ability to competently represent Officer Macpherson resulted in Officer Macpherson's complete reliance on these statements.  As a result, Marano was hired as his attorney to represent him in the federal court case.

v.      Officer Macpherson's Reliance Was Justifiable

While Marano's, education, training and experience as an attorney was miniscule at best, there is no evidence to show that Officer Macpherson's reliance on Marano's statements were unjustified.  Marano was licensed by the Massachusetts Board of Bar overseers as an attorney and was recommended by a colleague of Officer Macpherson's.

vi.      Officer Macpherson's Reliance Upon The False Statement Caused Damage

Judge Brady specifically found that Marano's conduct directly caused Officer Macpherson to lose a valuable opportunity to either settle his case, or take it to trial and obtain a jury verdict which the court found that a jury trial would have resulted in a jury verdict of $150,000 had it gone to trial. *Brady Findings*, page 10.

In Cohen v. de la Cruz, 523 U.S. 213, the Court further held that while a direct benefit to the debtor is not required, 523(a)(2)(A) instead requires the creditor to sustain a loss due to the fraudulent conduct.  A successful claim under Section 523(a)(2)(A) distinguishes whether the loss suffered by the creditor is sustained as a proximate result of the debtor's false representation. See Ghomeshi at 1223.  In other words, the debt must result from or be traceable to the debtor's fraudulent conduct and creditors must actually be unaware of the falsehood.  In the present case, there is no doubt that the debt was a proximate result of Marano's false representation.  Judge Brady specifically found "[a]s a result of Marano's misconduct, officer Macpherson lost a valuable opportunity to either settle his case, or take it to trial and obtain a jury verdict".  Judge Brady further held that the lost settlement value was $100,000.00 and the lost jury award was $150,000.00.  *Brady Findings*, pages 10-11.

The creditor/plaintiff has met his burden of proving that all issues necessary for a determination that the debt is non-dischargeable under 523(a)(2)(A) were adjudicated in the Norfolk Superior Court case and this summary judgment is warranted.

**B.  Section 523(a)(4).**

Section 523(a)(4) excepts from discharge debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. Section 523(a)(4).  The findings of Judge Brady warrant discharge of debt from Marano's bankruptcy proceeding on these grounds as well.

In order to establish non-dischargeability under 523(A)(4), a creditor must show that the debtor was acting in a fiduciary capacity and that the fraud or defalcation must occur "while" the debtor is acting in his fiduciary capacity.  Stewart Title Guar. Co. v. McCarthy, 473 B.R. 485, 494 (2012).

        i.      The Findings of Judge Brady Established That Marano Was, At All Times, Acting In A Fiduciary Capacity With Officer Macpherson As His Attorney

An attorney such as Marano cannot reasonably dispute that he was in a fiduciary relationship with his client.  According to the United States Bankruptcy Court for the Eastern District of New York, courts have extended the interpretation of "fiduciaries" under Section 523(a)(4) not just to trusts arising under formal trust agreements, or trusts expressly imposed by statute, but also to "relationships in which 'technical trust type' obligations are imposed pursuant to statute or common law."  New York v. Suarez, 367 B.R. 332 (2007); Hutton v. Schulman, 196 B.R. 688, 697 (Bankr. S.D.N.Y. 1996).  The court in Redlich v. Lanell, 2006 Mass. Super. Lexis 149, held that Massachusetts courts "consider the relationship of attorney and client 'highly fiduciary' in nature."  This type of relationship requires an "unflinching fidelity to the client's interests."  Id.  See also Pollock, 391 Mass at 555; Berman v. Coakley, 243 Mass. 348, 354

(1923); Opert v. Mellios, 415 Mass. 634 (1993); Hendrickson v. Sears, 365 Mass. 83 (1974).

The court held that "the attorney is an expert, like a doctor, owing the client a duty of full

disclosure of the facts material to the client's interest." For this reason, the court holds attorneys

to a high standard and frowns on behavior that "indicates a greater interest in [the attorney's]

personal financial welfare than in his professional conduct in relationship to both his clients and

the court." This court in Barca v. Fontaine, 2011 Bankr. LEXIS 3618, found the parties to have

had an "ordinary commercial landlord-tenant relationship under which no fiduciary duties are

owed" but also cited Salinsky v. Perma-Home Corp., 15 Mass.App.Ct. 193 (1983) holding that

family relationships, relationships based on confidence and reliance, professional relationships,

or where a continuing duty to disclose exists constitute a valid fiduciary relationship. Id. Here,

there can be no doubt that Marano was Officer Macpherson's attorney for his Federal Court case,

and as such, Marano and Officer Macpherson's relationship was highly fiduciary in that Marano

owed Officer Macpherson a heightened duty in representing Officer Macpherson competently.

In every aspect, Marano and Officer Macpherson acted in a fiduciary nature in his representation

of Officer Macpherson. Marano's involvement, duties, and responsibilities far exceeded those of

the "closing attorney" in Stewart Title, supra.

　　　The Court in E.L. Hamm & Assoc. Inc. v. Sparrow, 306 B.R. 812 (2003) held that the

"exception from discharge applies ' . . . only to a debt created by a person who was already a

fiduciary when the debt was created." Here, Marano accepted the Plaintiff's case in the spring of

2007. *Brady Findings*, pages 3-4. Marano breached his fiduciary duty thereafter upon his failure

to provide adequate legal representation to the Plaintiff. More specifically, Marano breached his

duty as Plaintiff's fiduciary when he failed to adequately represent Officer Macpherson in a

competent manner by failing to comply with discovery rules; failing to oppose motions to

compel discovery; and failing to comply with a Federal Court Order regarding the production of

the requested discovery resulting in the dismissal of Plaintiff's case and denial of Plaintiff's

Request for Reconsideration.

> ii.     Judge Brady's Findings Establish Marano
>         Committed Both Fraud And Defalcation

As discussed above, it is the plaintiff/creditor's position that the findings of Judge Brady

established fraud on the part of Attorney Marano.  Those arguments will not be repeated here,

but are incorporated by reference.  In the event that this Court is not persuaded that Judge

Brady's findings establish "fraud", the plaintiff/creditor respectfully suggests that the lesser level

of culpability, "defalcation", has been established.

In Bullock v. Bank Champaign, N.A. 133 S. Ct. 1754 (2013), the Supreme Court defined

the term "defalcation" to include a "culpable state of mind requirement akin to that which

accompanies application of the other terms in the same statutory phrase.  We describe the state of

mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of

the relevant fiduciary behavior."  This Court further held that this standard does not require a

malicious motive by the creditor.  More simply, the Supreme Court held that in order to satisfy

Section 523(a)(4), where the conduct at issue does not involve bad faith, moral turpitude or other

immoral conduct, the conduct must be intentional.  The Court defines intentional as conduct that

not only the fiduciary knows to be improper, but also reckless conduct of the kind that the

criminal law treats as equivalent under the Model Penal Code.  Accordingly, the MPC states

"where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the

fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk'

that his conduct will turn out to violate a fiduciary duty." ALI, Model Penal Code §2.02(2)(c), p.

226 (1985). See id., §2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition

of "knowledge" was designed to include "willful blindness"). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation."

Judge Brady's findings establish such.  Judge Brady found that by saying or implying to the Plaintiff that the Plaintiff had a great case and that he (Marano) knew what he was doing and that he would get the Plaintiff a big verdict Marano was merely "blowing smoke.  He did not know what he was doing.  He had been practicing law for about 15 months.   He did not know the rudiments of the Federal Rules of Civil Procedure and the local rules of the United States District Court".  *Brady Findings*, pages 9-10.  The Court further found that Marano violated the Massachusetts Rules of Professional Conduct, Rule 1.1 requiring a lawyer to "provide competent representation to a client" through adequate legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation; Rule 1.3 requiring Marano to act with reasonable diligence; and Rule 1.4 requiring McPherson to keep his client reasonably informed about the status of the matter.  *Brady Findings*, page 10.  Judge Brady held that Marano was "hopelessly incompetent" in his representation of Officer Macpherson.  Id.  Judge Brady found that Marano committed malpractice and that such malpractice was "willful and knowing in that he knew that his legal knowledge about the rules governing civil litigation was woefully inadequate to handle plaintiff's case."  *Brady Findings*, page 11.  He further found that Marano's conduct resulted in the Plaintiff losing a valuable opportunity to either settle his case, or take it to trial and obtain a jury verdict which the court found that a jury trial would have resulted in a jury verdict of $150,000 had it gone to trial.  *Brady Findings*, page 10.

Finally, Judge Brady found a second, alternative basis for awarding punitive (treble) damages against Marano which is relevant to this Court's consideration. Judge Brady found that "because Marano never responded to the chapter 93A, §9 demand, I find that his refusal to grant relief was made in bad faith with reason to know that his misconduct violated G.L. c. 93A, §2 (declaring unlawful unfair or deceptive acts or practices in the conduct of any trade or commerce). He did not respond to the chapter 93A letter because he had nothing to say; his malpractice was indefensible. He was obliged to make a reasonable settlement offer. His failure to do so warrants treble damages." *Brady Findings*, page 11. Thus, Marano committed defalcation as a fiduciary when he knowingly and willfully failed to make a reasonable settlement offer. This defalcation was adjudicated in the Norfolk Superior Court Case and is grounds for a finding by this Court that the debt ($450,000.00) is non-dischargeable under 523(A)(4).

<u>**CONCLUSION**</u>

For the foregoing reasons, the Creditor/Plaintiff respectfully requests that the Court enter an Order granting summary judgment in his favor and against the Debtor excepting the Debtor's obligations to him (in the amount of $450,000.00) from any discharge entered in this bankruptcy case, pursuant to 11 U.S.C. §523(a)(2)(A) and/or §523(a)(4)

Respectfully submitted,

<u>/s/ Michael J. Heineman</u>
Michael J. Heineman, Esq.
BBO# 556841
Heinlein Beeler Mingace & Heineman, P.C.
276 Union Avenue
Framingham, MA  01702
T – (508) 626-8500
F – (508) 655-2700
MHeineman@HBMHlaw.com

Dated: December 06, 2016

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non registered participants on December 6, 2016.


/s/ Michael J. Heineman, Esq.